UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
RIVERKEEPER, INC.                            :
                                             :
                  Plaintiff,                 :
                                             : **No. 14-cv-01055 (NGG)(SMG)**
         v.                                  :
                                             : **[PROPOSED] CONSENT**
BROOKLYN READY MIX CONCRETE, LLC             : **DECREE**
and MICHAEL SEARS,                           :
                                             :
                  Defendants.                :
---------------------------------------------------------------- :
                                             X

    WHEREAS, Plaintiff Riverkeeper, Inc. is a not-for-profit environmental organization, organized under the laws of the state of New York, with its principal place of business in Ossining, New York.

    WHEREAS, Defendant Brooklyn Ready Mix Concrete, LLC is a limited liability company formed under the laws of the State of New York that has an office at 470 Scott Avenue, in Brooklyn, and owns and operates a ready mix concrete plant at 470 Scott Avenue ("the Facility").

    WHEREAS, Defendant Michael Sears is the registered Chief Executive Officer of Brooklyn Ready Mix Concrete, LLC and is responsible for operation of the Facility.

    WHEREAS, Defendants have in the past discharged polluted stormwater runoff from the Facility into the waters of the United States, including Newtown Creek, which in turn discharges to New York Harbor.

    WHEREAS, the Facility is a ready mix concrete plant that operates under a primary Standard Industrial Classification ("SIC") Code of 3273 and therefore any discharge of stormwater associated with activities at the Facility is subject to the General Permit for the Discharge of Stormwater Associated with Industrial Activity ("General Permit") issued by the New York State Department of Environmental Conservation ("DEC"), Permit No. GP-0-12-001.

    WHEREAS, DEC inspected the Facility on June 26, 2012 and subsequently issued Defendants a Notice of Violation dated July 31, 2012, on the grounds that that Defendants' operations have reasonable potential to discharge stormwater to Newtown Creek.

WHEREAS, in discussions with DEC, Defendants claimed that the Facility is exempt from the need to seek stormwater permit coverage because it does not discharge polluted stormwater.

WHEREAS, DEC countered that Defendants' claim of zero discharge was unsupported by detailed plans or calculations and gave Defendants until September 2012 to support the claim.

WHEREAS, as of December 3, 2013, Defendants had not provided adequate support for the claim of zero discharge.

WHEREAS, Riverkeeper sent a notice of intent to sue Defendants (the "Notice Letter") on December 3, 2013.

WHEREAS, Riverkeeper filed this action on February 18, 2014, alleging violations of 33 U.S.C. §§ 1311(a) and 1342 of the Clean Water Act (CWA) seeking declaratory and injunctive relief, civil penalties, and reasonable attorneys' fees and costs.

WHEREAS, Riverkeeper alleged in its complaint (the "Complaint") and in its earlier Notice Letter that Defendants have violated and continue to violate CWA Section 33 U.S.C. §§ 1311(a) and 1342 by, inter alia, discharging polluted stormwater associated with industrial activity without coverage under the General Permit and by failing to comply with the conditions of the General Permit.

WHEREAS, Defendants have operated a ready mix concrete facility adjacent to Newtown Creek for many years without coverage under the General Permit or an individual NPDES permit.

WHEREAS, Defendants have voluntarily invited Riverkeeper to enter and inspect the Facility and have cooperated fully with Riverkeeper's requests for information.

WHEREAS, subsequent to the filing of this suit, DEC also inspected Defendants' Facility and Defendants have cooperated fully with DEC as well.

WHEREAS, although Defendants have never filed for General Permit coverage, they had previously developed a stormwater pollution prevention plan (SWPPP).

WHEREAS, Defendants conduct industrial activities on two legally distinct but physically adjacent parcels of land: the Facility proper, a parcel of privately-owned land demarcated by the City of New York and known as 470 Scott Avenue; and the end of Scott Avenue, a mapped street that dead-ends into Newtown Creek, but that is adjacent to and without visible separation from Defendant's property.

WHEREAS, with respect to the Facility:

- The Facility is generally graded and designed to convey any water on the ground into a central basin where solids are separated out and the water is reused in the Facility's operations;

- The entire surface of the facility is sealed to prevent any infiltration of water to ground;

- DEC and Riverkeeper both requested that Defendants implement basic, improved housekeeping and materials management measures – chiefly lowering the height of sand and aggregate piles to avoid spillage or drift over an existing concrete block wall that separates materials and activities from the Creek;

- Riverkeeper also requested that Defendants install a drip tray underneath liquids loading valves, raise the height of the existing concrete block wall, apply a waterproof membrane to the base of that wall to prevent flow through the gaps in the blocks, and, as suggested by the Defendants, apply a band of paint around the edges of all sand and aggregate pile walls to mark maximum pile heights;

- Defendants have agreed to implement all of the measures requested by Riverkeeper or DEC, on the schedule set forth below, and have already implemented most of these measures; and

- Defendants have produced the no-discharge calculations requested by DEC in 2013 and have included them in their SWPPP;

on the basis of the foregoing measures and commitments for the Facility, Riverkeeper is satisfied that once all of the measures agreed between the Parties are implemented there will be no reasonable potential to discharge from the Facility, so long as the measures are adhered to and well-maintained.

WHEREAS, with respect to stormwater and industrial activities on Scott Avenue (i.e., next to the Facility):

- There is a city-owned stormwater catch basin in the center of Scott Avenue that is designed to drain directly into Newtown Creek and, when it rains, the catch basin backs up and a large pool of water forms in the center of Scott Avenue;

- Defendants conducted an engineering investigation and hired contractors to unblock the catch basin, but were told that it cannot be done;

- On that basis, Defendants believe that the stormwater catch basin is in such poor condition that it is completely blocked and does not convey any flow to Newtown Creek;

- Riverkeeper disagrees, and believes that although the catch basin and sewer are significantly obstructed, some stormwater still flows from Scott Avenue into the catch basin and slowly drains to Newtown Creek through the conveyance or, at the minimum, through surrounding groundwater flow;

- Riverkeeper observed that Defendants had placed a large tank of diesel fuel on or directly beside Scott Avenue and refuel their vehicles while they are parked on Scott Avenue;

- Riverkeeper has observed mechanics performing vehicle maintenance on concrete trucks parked on Scott Avenue;

- Riverkeeper has observed pollutants from vehicle refueling entering the pool of water that forms during rain events above the Scott Avenue catch basin, and Riverkeeper believes that pollution from vehicle maintenance activities also enters the catch basin and that, in wet weather, pollutants enter the pool of water that forms above the catch basin;

- Riverkeeper requested that Defendants move the diesel fuel tank away from Scott Avenue, onto the Facility, and conduct all refueling operations on the Facility, in an area that drains to the central basin;

- Riverkeeper requested that Defendants immediately stop conducting vehicle maintenance of any sort on Scott Avenue and conduct all maintenance activities only on vehicles parked on the Facility, in an area that drains to the central basin;

- Defendants have agreed to implement these requested measures on the schedule set forth below;

- The parties wish to avoid litigation over the possible connection between discharges to the blocked storm drain and Newtown Creek; and

- In any case, the storm drain in question and the storm sewer to which it connects may be altered or removed within the next few years as part of a larger City of New York project to construct a new bridge over Newtown Creek, occurring adjacent to Scott Avenue;

on the basis of the foregoing measures and commitments, Riverkeeper is satisfied that if Defendant adheres to this agreement, the only activity occurring on Scott Avenue in the future will be the passage and parking of clean concrete trucks (the trucks are cleaned on the Facility, in an area that drains to the central basin), and thus all "industrial activities" that fall within the definition set forth at 40 C.F.R. § 122.26(b)(14) will take place exclusively on the Facility.

WHEREAS, Defendants provided to Riverkeeper a copy of their current Stormwater Pollution Prevention Plan (SWPPP).

WHEREAS, Defendants have committed to update the SWPPP to reflect completion of all of the measures above on the schedule set forth below, and to provide the updated SWPPP to Riverkeeper.

WHEREAS, Defendants have committed to provide Riverkeeper with any future updated SWPPPs and inform Riverkeeper of any changes to the Facility which may affect the no-discharge nature of the Facility, including changes which may be required as part of the aforementioned City of New York project to construct a new bridge over Newtown Creek, occurring adjacent to Scott Avenue.

WHEREAS, Defendants have experienced several consecutive years of losses, operating in deficit, and are in severe financial distress that precludes them from paying penalties to the Treasury or making an environmental benefit payment in lieu of penalty.

WHEREAS, without any concession or admission by Defendants that they are in violation of the Clean Water Act, or any concession or admission by Riverkeeper that Defendants' implementation of the measures listed above will prevent all discharge of polluted stormwater or will assure compliance with the terms and conditions of the General Permit, Riverkeeper and Defendants (collectively, "the Parties" or individually "Party") agree that it is in their mutual interest to resolve this matter without the taking of evidence or findings of fact or law, and the Parties would like to avoid prolonged and costly litigation; and

WHEREAS, this Decree shall be submitted to the United States Department of Justice and the United States Environmental Protection Agency for the 45 day statutory review period, pursuant to 33 U.S.C. § 1365(c).

NOW, THEREFORE, without the trial of any issue of fact or law, without the admission by Defendants of any of the facts or violations alleged in the Complaint, upon consent of the Parties, and upon consideration of the mutual promises contained herein,

**IT IS HEREBY STIPULATED BETWEEN THE PARTIES AND ORDERED, ADJUDGED AND DECREED BY THE COURT AS FOLLOWS:**

**I.    DEFINED TERMS**

The defined terms set forth in the foregoing recitals are hereby incorporated into the body of this Decree and are made a part hereof.  In addition, the following terms used in this Decree have the meaning set forth below:

1. Effective Date:  the day the Court enters this Decree after the expiration of the forty-five (45) day review period required by 33 U.S.C. § 1365(c)(3).

2. Term of this Decree: the period beginning on the Effective Date and ending three (3) years from the date of the Effective Date.

3. The Facility: the ready mix concrete plant owned and operated by Defendants and located on the parcel of land known commonly as 470 Scott Avenue in Brooklyn.

4. Scott Avenue: for purposes of this Decree, the name refers only to the last few hundred feet of the public highway named Scott Avenue adjacent to the Facility.

5. "The Agencies" shall mean the United States Environmental Protection Agency and the United States Department of Justice.

## II. JURISDICTION AND VENUE

6. **Jurisdiction.** Jurisdiction over this action is conferred by 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365(a) (Clean Water Act jurisdiction). Riverkeeper has standing and has complied with the statutory notice requirements under the CWA, 33 U.S.C. § 1365(a)(1), and the corresponding regulations at 40 C.F.R. § 135.2. An actual, justiciable controversy exists between Riverkeeper and Defendants. The requested relief is proper under 28 U.S.C. §§ 2201, 2202, and 33 U.S.C. § 1365(a).

7. **Venue.** Venue is properly vested in this Court pursuant to 33 U.S.C. § 1365(c)(1), because the events giving rise to this action occurred at the Facility, and in the Newtown Creek and New York Harbor watersheds, which are located within this judicial district.

8. **Consent.** For purposes of this Decree, or any action to enforce this Decree, Defendants consent to the Court's jurisdiction over this Decree and any such action and over Defendants. For purposes of this Decree, Defendants consent to venue in this judicial district.

## III. COMPLETION OF STRUCTURAL STORMWATER CONTROLS

9. **Structural Changes**. As soon as is practical, and not later than October 31, 2014, Defendants shall:

    a. Relocate the diesel tank onto the Facility such that both the tank and any vehicle being refueled are located fully on the Facility, in an area that drains to the central basin;

    b. Apply a waterproof membrane to the outside of the existing concrete block wall which faces Newtown Creek. The membrane shall cover the two lowest tiers of concrete block at ground level;

    c. Increase the height of the existing concrete block wall by at least 1 foot, as per the specifications prepared by Ted Yen, PE. The block wall shall be painted with a strip marking the maximum height of sand and aggregate materials to be stored in the piles so as to aid operators in ensuring overfill does not occur; and

d. Install a drip tray underneath the nozzles that connect hoses from bulk carrier trucks to the lines that convey fluids to sealed and roofed chemical totes and similar containers.

10. **Photographic Proof.** Not later than August 31, 2014, Defendants shall provide Riverkeeper with photographs showing that the membrane, wall, paint strip, drip tray, and diesel tank relocation are all complete.

11. **SWPPP Revision.** Not later than August 31, 2014, Defendants shall update the current SWPPP to reflect the structural changes above and provide a revised SWPPP to Riverkeeper.

12. **SWPPP Implementation**. Defendants will implement the existing SWPPP (and after August 31, 2014, the revised SWPPP) at the Facility in compliance with the terms of the Clean Water Act. The most recent version of the SWPPP is incorporated by reference at all times into this Decree, and a failure to adhere to the SWPPP is a violation of this Decree.

13. **SWPPP Amendments.** If Defendants amend the SWPPP for any reason, Defendants shall provide written notice to Riverkeeper within one (1) week of the amendment or of learning of the need to amend its SWPPP, whichever is sooner, and shall provide Riverkeeper with all documents related to such amendment.

14. **Implemented Storm Water Controls.** Defendants shall maintain in good working order all controls, pollution prevention, and storm water collection and treatment systems currently installed or to be installed pursuant to this Consent Decree, including but not limited to existing housekeeping measures.

15. **Compliance with Clean Water Act.** Defendants agree to operate the Facility in compliance with the applicable requirements of the Clean Water Act.

IV. **PERMANENT CHANGES TO OPERATIONAL PRACTICES**

16. **Permanent Cessation of "Industrial Activity" on Scott Avenue.** Effective immediately (i.e. <u>before</u> the Effective Date), Defendants shall cease conducting any vehicle maintenance activities on Scott Avenue. And as soon as it is practical to relocate the diesel fuel tank, and in any event no later than August 31, Defendants shall cease refueling vehicles on Scott Avenue. Defendant shall never conduct on Scott Avenue any other industrial activity that falls within the definition set forth at 40 C.F.R. § 122.26(b)(14).

17. The passage and parking of vehicles on Scott Avenue are ordinary uses of a public highway and are not prohibited by this Decree.

V. **MONITORING PROGRAM**

18. **Monitoring.** Defendants agree to perform the following monitoring during the Term of this Decree:

    a. Quarterly, during dry weather: walk the facility and inspect to ensure that housekeeping practices are being adhered to, there is no unnecessary exposure of pollutants, and stormwater controls are being observed. Photograph same.

    b. Quarterly, during wet weather: walk the facility and ensure that there is no discharge from the facility to Scott Avenue and that all control measures are functioning as intended. Photograph same.

    c. Annually: inspect the membrane on the outside of the concrete wall facing Newtown Creek to ensure that the membrane is still functional and intact, and inspect the outside of the wall to ensure that no material is deposited there. Photograph same.

19. **SWPPP Revision.** Not later than October 31, 2014, Defendants shall update the current SWPPP to reflect the monitoring requirements above and provide a revised SWPPP to Riverkeeper.

20. **Recordkeeping.** Defendants shall maintain written documentation at the Facility describing all inspections and assessments required under the SWPPP or this Decree.

21. **Results sent to Riverkeeper.** Defendants shall forward copies of such documentation (including photographs) to Riverkeeper on an annual basis during the Term of this Decree. Further, During the Term of this Decree, Defendants shall copy Riverkeeper on any documents related to water quality or Clean Water Act compliance regarding the Facility submitted to any government agency including, but not limited to, the EPA, DEC, and New York City DEP.

22. **Inspections.** Defendants agree to grant site access to representatives of Riverkeeper, including consultants acting on its behalf, to inspect the Facility for compliance with this Decree. Such access will be provided upon seven (7) days notice and up to once per quarter (four times per year) during the Term of this Decree. Site visits shall be conducted only during the Facility's normal business hours. Riverkeeper representatives may collect samples of stormwater discharges and take photographs of the Facility. Should any noncompliance with the terms of this Decree be identified by a representative of Riverkeeper, Defendants will provide the opportunity for one (1) additional site visit per month until the Facility is fully compliant with the General Permit and this Decree, and the Parties will follow the procedures outlined for corrective action in Paragraphs 25-29. Riverkeeper will provide Defendants with copies of any such determinations of noncompliance within three (3) business days of receipt of such information by Riverkeeper after the site visit. Defendant does not through this process admit that the noncompliance alleged by Riverkeeper has occurred and Defendant retains the right to contest any alleged violations.

## VI. VIOLATIONS

23. **Corrective and Follow Up Action.** If Riverkeeper provides Defendant notice of a violation or non-compliance with the Decree, Defendants shall take responsive actions to improve storm water management practices, including re-evaluating structural and non-structural BMPs and considering additional BMPs aimed at reducing pollutant levels. Defendant shall take simple or temporary corrective actions as soon as is reasonably possible.

24. In furtherance of these obligations, Defendant shall prepare a written statement ("Memorandum") discussing:

    - Defendant's views on the possible cause(s) and/or source(s) of the non-compliance identified by Riverkeeper; and

    - Responsive actions, including modified or additional feasible best management practices ("BMPs"), to avoid recurrence of the non-compliance and reduce storm water pollution.

    Such Memorandum shall be e-mailed and sent via first class mail to Riverkeeper no later than 45 days following receipt of Riverkeeper's notice.

25. Any additional measures set forth in the Memorandum shall be implemented and the Facility's SWPPP shall be amended as necessary to include any additional BMP measures designated in the Memorandum no later than 120 days after the Memorandum is sent to Riverkeeper, or 120 days after the last event in the process described below.

26. Upon receipt of the Memorandum, Riverkeeper may review and comment on any additional measures. If requested by Riverkeeper within thirty (30) days of receipt of such Memorandum, the Parties shall meet and confer, which may include a site inspection, within sixty (60) days after the receipt of the Memorandum to discuss the contents of the Memorandum and the adequacy of proposed measures to improve the quality of the Facility's storm water. If within thirty (30) days of the Parties meeting and conferring, the Parties do not agree on the adequacy of the additional measures set forth in the Memorandum, the Parties may agree to seek a settlement conference with the Judge. If the Parties fail to reach agreement on additional measures, Riverkeeper may bring a motion before the Judge. If Riverkeeper does not request a meet and confer regarding the Memorandum within thirty (30) days of receipt, Riverkeeper shall waive any right to object to such Memorandum pursuant to this Decree.

27. Any concurrence or failure to object by Riverkeeper, as appropriate, with regard to the reasonableness of any additional measures required by this Decree or implemented by

Defendants shall not be deemed to be an admission of the adequacy of such measures should they fail to bring the Facility's storm water management measures into compliance with applicable water quality criteria or the Clean Water Act's technology based standards requiring industrial stormwater discharges to be controlled to the level achievable by the best available technology economically achievable ("BAT").

## VII. PAYMENTS

28. **Fees, Costs, and Expenses.** Defendants shall pay a sum of two thousand ($2,000) as full and complete satisfaction of Riverkeeper's claims for attorneys' fees and costs incurred to date, including investigative and expert costs. The payment shall be made by certified bank check on or before October 31, 2014. The check shall be payable to "Super Law Group, LLC". Payments will be deposited in Super Law Group's IOLA Trust Account for the benefit of Riverkeeper.

29. **Acceleration.** In the event that any payment owed by Defendants under the Decree is not made on or before the due date, Defendants shall be deemed in default of their obligations under the Decree, and all of the outstanding payment obligations under this Decree shall be accelerated such that they shall be immediately due and owning notwithstanding any payment schedule set forth in this Decree. In addition to a continued requirement to make the payment, Defendants shall pay ten (10) percent annual interest, accruing daily, on any unpaid balance.

## VIII. EFFECT OF DECREE

30. **Riverkeeper's Release of Liability.** Upon Court approval and entry of this Consent Decree, Riverkeeper covenants not to sue and releases Defendants (including their representatives, assigns, agents, employees, officers, attorneys and consultants) from any and all claims, causes of action, or liability under Section 505 of the Clean Water Act, 33 U.S.C. § 1365, for damages, penalties, fines, injunctive relief, or any other claim or relief (i) relating to or resulting from noncompliance with the Clean Water Act occurring prior to the Effective Date, and (ii) for any past violations of the Clean Water Act at the Facility alleged, or that could have been alleged in the Complaint. This Paragraph does not constitute a waiver or release of any claims relating to the enforcement of this Decree.

31. **Reservation.** Riverkeeper does not waive its right to bring a future action for injunctive or declaratory relief, penalties, and attorneys' fees and costs based on stormwater discharges that occur after the Term of this Decree.

32. **Defendants' Releases of Liability.** Defendants release and discharge Riverkeeper and its representatives, assigns, agents, employees, officers, attorneys and consultants, including those who have held positions in the past, from any and all claims, liability, demands, penalties, costs, and causes of action of every nature which concern or are connected with this action.

33. **Compliance with Law.** Riverkeeper does not by consent to the Decree warrant or aver in any manner that Defendants' compliance with this Decree shall constitute or result in compliance with federal or state law or regulation. Nothing in this Decree shall be construed to affect or limit in any way the obligations of Defendants to comply with all federal, state, and local laws and regulations governing any activity required by this Decree.

34. **Impossibility of Performance.** Where implementation of the actions set forth in this Decree within the agreed deadlines becomes impossible, despite the timely good faith efforts of the Parties, the Party who is unable to comply shall notify the others in writing within seven days of the date that the failure becomes apparent, and shall describe the reason for the non-performance. The Parties agree to meet and confer in good faith concerning the non-performance and, where the Parties concur that performance was or is impossible, despite the timely good faith efforts of one of the Parties, new performance deadlines shall be established. In the event that the Parties cannot timely agree upon the terms of such a stipulation, either of the Parties shall have the right to seek intervention of the Court.

## IX. FEDERAL REVIEW OF DECREE

35. **Review by Agencies.** The Parties recognize that, pursuant to 33 U.S.C. § 1365(c)(3), this Decree cannot be entered until forty-five (45) days after the receipt of a copy of the proposed Decree by the United States Attorney General and the EPA. Therefore, upon signing of this decree by the Parties, Riverkeeper shall serve copies of this Decree upon the EPA Administrator, the Regional EPA Administrator, and the Attorney General for review, as required by 40 C.F.R. § 135.5. If for any reason the United States should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith to cure any objection to entry of this Decree raised by the United States.

36. **Entry of Order.** Upon the expiration of the forty-five-day review period provided by 33 U.S.C. § 1365(c)(3), the Parties shall jointly move the Court for entry of this Decree. This Decree shall take effect on the date it is entered by this Court and shall terminate three (3) years from when it is entered by the Court. If for any reason the Court should decline to approve this Decree in the form presented, the Parties agree to continue negotiations in good faith in an attempt to cure any objection raised by the Court to entry of this Decree.

## X. MODIFICATION AND ENFORCEMENT OF DECREE

37. **Modification in Writing.** This Decree may be modified only upon written consent of the Parties and the approval of the Court.

38. **Continuing Jurisdiction of the Court.** The United States District Court for the Eastern District of New York shall retain and shall have jurisdiction over the Parties to this Decree for the resolution of any disputes that may arise under this Decree. This Court

shall also allow this action to be reopened for the purpose of enabling the Parties to this Decree to apply to the Court for any further order that may be necessary to construe, carry out, enforce compliance and/or resolve any dispute regarding the terms or conditions of this Decree.

39. **Notice.** Riverkeeper shall provide Defendants with 72 hours written notice prior to initiating court proceedings to enforce this Decree at the address shown below in the signature line.

## XI. DISPUTE RESOLUTION PROCEDURE

40. **Meet and Confer.** Except as specifically noted herein, any disputes with respect to any of the provisions of this Decree shall be resolved through the following procedure. The Parties agree to first meet and confer to resolve any dispute arising under this Decree. In the event that such disputes cannot be resolved through this meet and confer process, the Parties agree to request a settlement meeting before the Magistrate Judge. In the event that the Parties cannot resolve the dispute by the conclusion of the settlement meeting with the Magistrate Judge, the Parties agree to submit the dispute via motion to the Magistrate Judge.

41. **Fee Awards.** In resolving any dispute arising from this Agreement, the Judge shall have discretion to award attorneys' fees and costs. The relevant provisions of the Clean Water Act and Rule 11 of the Federal Rules of Civil Procedure shall govern the allocation of fees and costs in connection with the resolution of any disputes before the Magistrate Judge.

## XII. MISCELLANEOUS PROVISIONS

42. **Entire Agreement.** This Decree constitutes the entire agreement among the Parties concerning the subject matter hereof and supersedes all previous correspondence, communications, agreements and understandings, whether oral or written, among the Parties.

43. **Notices.** Any notice, demand, copies of documents and other communications required to be made under the provisions of this Decree (collectively, "Notices") by any Party hereto shall be effective only if in writing and (a) personally served, (b) mailed by United States registered or certified mail, return receipt requested, postage prepaid, or (c) sent by a nationally recognized courier service (i.e., Federal Express), to be confirmed in writing by such courier. Notices shall be directed to the Parties at their respective addresses set forth below. Notices given in the foregoing manner shall be deemed given (a) when actually received or refused by the party to whom sent if delivered by courier, or (b) if mailed, on the day of actual delivery as shown by the addressee's registered or certified mail receipt or at the expiration of three (3) business days after the date of mailing, whichever first occurs.

Notices for Riverkeeper shall be sent to:

Reed Super
Super Law Group, LLC
131 Varick Street, Suite 1033
New York, NY 10013
*Attorney for Riverkeeper*

Notices sent to the individual listed above at the address listed above shall be deemed as notice to Riverkeeper.

Notice for all Defendants shall be sent to:

Michael Sears
Brooklyn Ready Mix Concrete, LLC
470 Scott Avenue
Brooklyn, NY 11222

Notices sent to Mr. Sears shall be deemed as notice to all Defendants.

Each Party shall promptly notify the other Party of any change in the above-listed contact information by using the procedures set forth in this paragraph.

44. **Authorization.** Each person signing this Decree represents and warrants that s/he has been duly authorized to enter into this Decree by the Party on whose behalf it is indicated that the person is signing.

45. **Successors and Assigns.** This Decree shall be binding upon and inure to the benefit of the Parties and their respective representatives, heirs, executors, administrators, successors, officers, directors, agents, attorneys, employees and permitted assigns.

46. **Transfer of Ownership.** Defendants shall notify Riverkeeper prior to any transfer of ownership or control of the Facility to a non-Party. Defendants agree that as a condition of transfer of ownership or control of the Facility, the new owner or operator shall be informed in writing of this Decree and of its requirements to comply with the Clean Water Act.

47. **Interpretation.** The provisions contained herein shall not be construed in favor of or against any Party because that party or its counsel drafted this Decree, but shall be construed as if all Parties prepared this Decree, and any rules of construction to the contrary are hereby specifically waived. The terms of this Decree were negotiated at arm's length by the Parties hereto. The language in all parts of this Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined by law, in the General Permit, Clean Water Act or specifically herein.

48. **Headings.** The section and paragraph headings contained in this Decree are for reference purposes only and shall not affect in any way the meaning or interpretation of this Decree.

49. **Counterparts.** This Decree may be executed in two or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. The Parties authorize each other to detach and combine original signature pages and consolidate them into a single identical original. Any one of such completely executed counterparts shall be sufficient proof of this Decree. Telecopied, scanned (.pdf), and/or facsimiled copies of original signature shall be deemed to be originally executed counterparts of this Decree. Copies of the original Decree, whether transmitted by facsimile or other means, shall be effective.

50. **Severability.** In the event that any of the provisions of this Decree are held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

51. **Joint and Several Liability.** Defendants are jointly and severally liable for all payments required under this Decree.

52. **Changes to the General Permit.** Defendants will comply fully with the General Permit and any permit modification, individual permit, or General Permit reissuance applicable to the Facility during the Term of this Decree. If new or revised benchmark monitoring cutoff concentrations or effluent limitations (numeric or non-numeric) become applicable, compliance with them is required and any exceedance of a new or modified benchmark monitoring cutoff concentration or effluent limitation will have the same effect as any exceedance of an existing benchmark monitoring cutoff concentration or effluent limitation.

Dated: _____  Michael Sears & Brooklyn Ready Mix, Concrete LLC

_By: Michael Sears_
Title: CEO, Brooklyn Ready Mix Concrete, LLC

Dated:  10-2-14  Riverkeeper, Inc.

_____
By: Phillip Musegaas
Title: Hudson River Program Director

ENTERED and DATED this 2 day of O_____, 2014

_____
Honorable Nicholas G. Garaufis
United States District Judge

Dated: _____          Michael Sears & Brooklyn Ready Mix, Concrete
                                LLC

                                _____
                                By: Michael Sears
                                Title: CEO, Brooklyn Ready Mix Concrete, LLC

Dated: 10/6/14                  Riverkeeper, Inc.

                                *Phillip Musegaas* (signature)
                                By: Phillip Musegaas
                                Title: Hudson River Program Director


ENTERED and DATED this ___ day of _____, 2014



                                _____
                                Honorable Nicholas G. Garaufis
                                United States District Judge